**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>James Edwin Ollis,<br><br>                                    Debtor. | C/A No. 20-02775-HB<br>Chapter 12 |
| Anthony Brad Thompson,<br>                                    Plaintiff,<br>v.<br>James Edwin Ollis,<br>                                    Defendant. | Adv. Pro. No. 20-80075-HB |
| Jeff Verkon,<br>                                    Plaintiff,<br>v.<br>James Edwin Ollis,<br>                                    Defendant. | Adv. Pro. No. 20-80076-HB |
| Pedro Arguedas,<br>                                    Plaintiff,<br>v.<br>James Edwin Ollis,<br>                                    Defendant. | Adv. Pro. No. 20-80077-HB |
| Daniel Chapman,<br>                                    Plaintiff,<br>v.<br>James Edwin Ollis,<br>                                    Defendant. | Adv. Pro. No. 20-80078-HB |
| William Lee Thompson,<br>                                    Plaintiff,<br>v.<br>James Edwin Ollis,<br>                                    Defendant. | Adv. Pro. No. 20-80079-HB<br><br>**ORDER** |

**THIS MATTER** came before the Court for trial of the Complaints filed by Plaintiffs

Anthony Brad Thompson ("B. Thompson"), Jeff Verkon, Pedro Arguedas, Daniel Chapman, and

William Lee Thompson ("L. Thompson"), asserting the debts owed to them by Defendant James

Edwin Ollis are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Robert H. Cooper represented the Plaintiffs and Ollis appeared *pro se*. The parties agreed to a simultaneous trial of all matters since they involve similar facts. The testimonies of each Plaintiff and other witnesses were offered in concert in all matters without objection from Ollis. After considering the evidence and observing the credibility of the witnesses, the Court finds as follows pursuant to Fed. R. Civ. P. 52[1] and holds that the debts owed to Plaintiffs are excepted from discharge under § 523(a)(2)(A).

## BACKGROUND AND PROCEDURAL HISTORY

Ollis filed a petition for Chapter 12 relief on September 4, 2018. Plan confirmation was denied and that case was dismissed on March 28, 2019. Ollis filed this Chapter 12 case on July 2, 2020. His plan was confirmed on February 17, 2021, over the Plaintiffs' objections.[2] These adversary proceedings remained after confirmation.

## FINDINGS OF FACT

Ollis conducts and has conducted farming operations in Laurens County, South Carolina, which included the purchasing, fattening, and selling of cattle. Pre-bankruptcy, Ollis' cattle operation was funded in part by loans from members of his community who were offered returns on their investments. The debts owed to Plaintiffs arose from a common scheme – reported by the consistent testimony of all witnesses – where Ollis would approach individuals with whom he had or established personal relationships and seek funding with promises that: the funds from each individual would be used to purchase cattle; the cattle would be tagged and identifiable; the cattle would be raised and fattened by Ollis; and the cattle would be sold to repay the loans with 12%

---

[1] Made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7052.
[2] *See Order Overruling Objections and Finding Chapter 12 Plan Should be Confirmed* (ECF No. 160, C/A No. 20-2775-hb). The Order noted that § 1228(a)(2) affords appropriate protection for Plaintiffs for any pre-petition bad conduct by Ollis because even if the plan is confirmed and Ollis receives a discharge, debts under § 523(a) are excepted from the discharge.

2

interest. Based on Ollis' representations and Plaintiffs' trust in and relationships with Ollis, Plaintiffs agreed to loan him money. At the time loans were made, Plaintiffs were not aware of the total number of loans Ollis had solicited or the extent of his debts. For most Plaintiffs, their loans constituted their retirement funds or life savings, most of which have not been repaid. Plaintiffs are not and were not in the business of lending money nor previously involved in significant transactions involving raising cattle.

      B. Thompson has known Ollis for approximately 25 years. They were coworkers when Ollis approached him about investing in his cattle operation and used their relationship and the false statements referenced above to entice B. Thompson to loan him money. Money was provided to Ollis by B. Thompson from November 2015 through July 2017. To memorialize these loans, Ollis executed a promissory note on November 3, 2017, in the amount of $1,100,000.00 with 12% interest per annum. B. Thompson testified that Ollis provided information and promises that Ollis knew to be false to persuade him to loan money, the information and promises were in fact false, and B. Thompson was unaware and reasonably relied thereon. Ollis did not object to the admissibility or consideration of any testimony of B. Thompson and did not question him on cross examination.

      L. Thompson and Ollis were friends for 10 years when Ollis asked him to loan money for the cattle operation and used their relationship and the false statements referenced above to entice L. Thompson to loan him money. Money was provided to Ollis by L. Thompson from December 2015 through July 2017. To memorialize these loans, L. Thompson and Ollis entered several loan agreements to purchase cattle from 2015 through 2018 in the total amount of $270,000.00 with 12% interest per annum. L. Thompson testified that Ollis provided information and promises that Ollis knew to be false to persuade him to loan money, the information and promises were in fact

3

false, and L. Thompson was unaware and reasonably relied thereon. Ollis did not object to the admissibility or consideration of any testimony of L. Thompson and did not question him on cross examination.

Pedro Arguedas has known Ollis for 18 years. He was approached by Ollis to loan money for the purchase of cattle and Ollis used their relationship and the false statements referenced above to entice Arguedas to loan money. Arguedas loaned him $200,000.00 to be repaid with 12% interest per annum, as evidenced by the parties' agreement entered on July 7, 2017. Arguedas testified that Ollis provided information and promises that Ollis knew to be false to persuade him to loan money, the information and promises were in fact false, and Arguedas was unaware and reasonably relied thereon. Ollis did not object to the consideration or admissibility of any testimony of Arguedas and did not question him on cross examination.

Daniel Chapman has known Ollis for 18 years. He was approached by Ollis to loan money for the purchase of cattle and Ollis used their relationship and the false statements referenced above to entice Chapman to loan money. Chapman loaned him $100,000.00 to be repaid with 12% interest per annum, as memorialized in their loan agreement entered on August 8, 2017. Chapman later loaned another $10,000.00 to Ollis after he asked for additional funds, again using their relationship and the same promises to persuade Chapman. Chapman testified that Ollis provided information and promises that Ollis knew to be false to persuade him to loan money, the information and promises were in fact false, and Chapman was unaware and reasonably relied thereon. Ollis did not object to the consideration or admissibility of any testimony of Chapman and did not question him on cross examination.

Jeff Verkon became acquainted with Ollis more recently after introduced to him by another Plaintiff. Verkon initially loaned Ollis $200,000.00 in February 2018. He made additional loans

4

in April and June 2018 for $100,000.00 each after requested by Ollis. Ollis used his personal relationship with Verkon and their mutual acquaintances and the false statements referenced above to entice these loans. Ollis and Verkon entered loan agreements providing for the repayment of the $400,000.00 loan sum with 12% interest per annum. Shortly after obtaining the loans from Verkon in Spring 2018, Ollis was indicted on two criminal charges. Verkon testified that Ollis provided information and promises that Ollis knew to be false to persuade him to loan money, the information and promises were in fact false, and Verkon was unaware and reasonably relied thereon. Ollis did not object to the consideration or admissibility of any testimony of Verkon and did not question him on cross examination.

When Plaintiffs asked to inspect the cattle allegedly purchased with their loans, they were shown cattle that was not owned by Ollis or not purchased with their loans, the cattle were not segregated, the quantity of cows was drastically less compared to the quantity that should have been purchased with the aggregate of all loan amounts, and/or the condition of the cattle was not consistent with the farming operation Ollis described to Plaintiffs in that the cattle had not been fattened and were less than satisfactory. When several Plaintiffs collectively asked for the return of their money after Ollis was indicted, Ollis told them he had some money available to repay them but it was hidden on his farm property and he was not willing to return it in case he needed it to contest the criminal charges. Ollis did not repay Plaintiffs and thereafter filed bankruptcy and did not list any significant assets.

As evidenced by the Transcript of Judgment entered in favor of B. Thompson in the Laurens County Court of Common Pleas on August 15, 2019, the Confessions of Judgment executed by Ollis in favor of the other Plaintiffs and filed with the Laurens County Court of

5

Common Pleas on March 24, 2020, Ollis' Schedule D, and the testimony, it is undisputed that he owes the following to Plaintiffs as of those dates:

- $1,384,431.06 owed to B. Thompson, accruing with 18% interest;
- $326,700.00 owed to L. Thompson;
- $242,000.00 owed to Arguedas;
- $133,100.00 owed to Chapman; and
- $484,000.00 owed to Verkon.

Ollis did not contest the validity or amount of these debts.

The testimonies of Plaintiffs and other witness were credible, consistent, and clear. It is worth reiterating that Ollis did not object to the consideration or admissibility of any testimony or evidence and did not question witnesses on cross examination. It is clear from the testimony that Ollis – having superior knowledge of his own finances, experience in the business he was pursuing, and knowledge of the number of cattle he had or could purchase and maintain and the costs thereof – knew at the time he made representations to Plaintiffs to persuade them to loan him money that those representations were false. Ollis intended for Plaintiffs to rely on this false information and used his friendships and misplaced trust as additional weapons.

Ollis' testimony regarding the truth of his representations to Plaintiffs to obtain the loans, his assurances of his performance, and the use of the funds loaned was vague. The only evidence submitted by Ollis was a brief, conclusory statement he read into the record. This statement was insufficient to counter Plaintiffs' overwhelming evidence and ineffective to convince the Court that Plaintiffs' or the other witnesses' testimonies should be disregarded in any way.

### APPLICABLE AUTHORITIES

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and the parties have consented to this Court entering a final order.

Under § 523(a)(2)(A), debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" are not dischargeable. "In addressing exceptions to discharge, courts 'traditionally interpret the exceptions narrowly to protect the purpose of providing debtors a fresh start' but 'are equally concerned with ensuring that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code.'" *In re Warren*, 507 B.R. 862, 872 (Bankr. D.S.C. 2013) (quoting *Foley & Lardner v. Biondo (In re Biondo),* 180 F.3d 126, 130 (4th Cir. 1999)). "As the party asserting a debt owed to it is nondischargeable, Plaintiff bears the burden of proof, which is by a preponderance of the evidence." *In re Warren*, 507 B.R. 862, 873 (Bankr. D.S.C. 2013) (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654 (1991)).

The Supreme Court has distinguished between "false pretenses and representations" and "actual fraud" as provided in § 523(a)(2)(A) and recognized two distinct paths for nondischargeability under this provision. *Husky Int'l. Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016). For a debt to be nondischargeable based on false pretenses and false representations, the creditor must prove:

> (1) that the debtor made a representation; (2) that at the time the representation was made, the debtor knew it was false; (3) that the debtor made the false representation with the intention of defrauding the creditor; (4) that the creditor justifiably relied upon the representation; and (5) that the creditor was damaged as the proximate result of the false representation.

*In re Brush*, 460 B.R. 448, 455-56 (Bankr. D.S.C. 2011) (citations omitted). "A false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression, while a false representation involves an express representation." *In re Scarlata*, 127 B.R. 1004, 1009 (N.D. Ill. 1991) (citing *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind.

7

1988), *aff'd in part sub nom. Matter of Scarlata*, 979 F.2d 521 (7th Cir. 1992). A debtor's knowledge of the falsity "can be satisfied by a showing of reckless indifference to the truth." *In re Estrin*, Adv. Pro. No. 15-80039-DD, 2016 WL 691506, at *9 (Bankr. D.S.C. Feb. 19, 2016) (citing *Visotsky v. Woolley, III (In re Woolley, III),* 145 B.R. 830, 834 (Bankr. E.D. Va. 1991)).

"With respect to the third element, intent to deceive, 'a debtor will be found to have acted with the requisite intent to defraud under Section 523(a)(2)(A) when, at the time the transaction occurred, it is established that the debtor, for personal gain, knowingly [misled] the investor as to a material fact concerning the [debt].'" *In re Campbell*, 545 B.R. 875, 893-94 (Bankr. M.D.N.C. 2016) (quoting *In re Peak,* No. 12-01424-8-ATS, 2013 WL 4478954, at *3 (Bankr. E.D.N.C. Aug. 20, 2013)) (alteration in original). "The debtor's intent shall be determined subjectively with a totality of the relevant circumstances taken into account." *In re Cleary*, 487 B.R. 633, 642 (Bankr. D. Md. 2013), *aff'd,* C/A No. 08-00264, 2013 WL 6713188 (D. Md. Dec. 18, 2013), *aff'd sub nom. Limberger v. Cleary*, 585 F. App'x 165 (4th Cir. 2014) (citations omitted). "Because direct proof of intent (*i.e.*, the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *In re Davis*, 494 B.R. 842, 868 (Bankr. D.S.C. 2013), *subsequently aff'd sub nom. Taylor v. Davis*, 607 F. App'x 298 (4th Cir. 2015) (citing *Caspers v. Van Horne (In re Van Horne),* 823 F.2d 1285, 1288 (8th Cir. 1987), *abrogated on other grounds, Grogan,* 498 U.S. at 291, 111 S.Ct. 654)).

"To satisfy the justifiable reliance element . . . a plaintiff must show that it actually relied on the debtor's misrepresentations, and was justified in doing so because of 'the circumstances of the particular case.'" *In re Warren*, 507 B.R. 862, 878 (Bankr. D.S.C. 2013) (quoting *SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 335 (4th Cir. 2013). Justifiable reliance is a subjective standard, which takes into account the relationship of the parties. *In re Janssens*, 449 B.R. 42, 76-

8

77 (Bankr. D. Md. 2010), *aff'd sub nom. Janssens v. Freedom Med., Inc.*, C/A No. JFM-10-2042, 2011 WL 1642575 (D. Md. Apr. 29, 2011); *see also In re Sharp*, 340 F. App'x 899, 906 (4th Cir. 2009) ("Justifiable reliance implicates a subjective standard and 'is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.'" (quoting *Field v. Mans*, 516 U.S. 59, 71, 116 S. Ct. 437 (1995)).

In order to establish that a debt is excepted from discharge based on "actual fraud" under § 523(a)(2)(A), the creditor must prove that: (1) the debtor committed actual fraud; (2) the debtor obtained money, property, services, or credit by the actual fraud; and (3) the debt arises from the actual fraud. *Husky*, 136 S. Ct. at 1587-88. For fraud to be "actual" fraud there must be wrongful intent; constructive or implied fraud is not actual fraud. *Id.*

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*In re Estrin*, Adv. Pro. No. 15-80039-DD, 2016 WL 691506, at *12 (Bankr. D.S.C. Feb. 19, 2016) (quoting *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000)). Regardless, "[a] plain reading of the subsection demonstrates that Congress excepted from discharge not simply any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property, services, or credit." *Nunnery v. Rountree (In re Rountree),* 478 F.3d 215, 219 (4th Cir. 2007).

## CONCLUSIONS

Applying applicable law to the facts of this case, Plaintiffs have demonstrated that the debts owed to them by Ollis should be excepted from his discharge pursuant to § 523(a)(2)(A) because

9

they were based on Ollis' false pretenses and false representations and because Ollis committed actual fraud. Ollis initiated and facilitated a scheme whereby he obtained loans from Plaintiffs supported by promises he knew he could not fulfill and did not intend to fulfill. Plaintiffs reasonably relied on those promises and were damaged as a result.

**IT IS, THEREFORE, ORDERED** that the debts owed to Plaintiffs by Ollis are nondischargeable under § 523(a)(2)(A). Separate judgments consistent with this Order will be entered contemporaneously herewith.

**FILED BY THE COURT**
**08/04/2021**



Entered: 08/04/2021

Chief US Bankruptcy Judge
District of South Carolina